FILED
2012 Apr-24  AM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **SHERRY A. BUTLER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:10-CV-3523-RBP** |
| | ) | |
| **ALLSTATE INDEMNITY** | ) | |
| **COMPANY, and LISA BARKLEY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This cause is before the court on Defendant Allstate Indemnity Company's ("Allstate") Motion to Reconsider the Court's Order and Opinion on Allstate's Motion for Final Summary Judgment filed on December 15, 2011. On December 12, 2011, upon consideration of Allstate's Motion for Final Summary Judgment, this court granted the motion with respect to the plaintiff Sherry A. Butler's ("plaintiff") bad faith claim and denied the motion with respect to the plaintiff's contract claim. Allstate maintains that it is also entitled to summary judgment with respect to the plaintiff's contract claim. The issue before this court is whether Allstate is allowed to void the subject insurance policy based on the undisputed facts of this case.

## Allstate's Position

First, Allstate argues that the plaintiff's affidavit is a "sham," borrowing the term from an Eleventh Circuit decision in which the court held, "'[w]hen a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot

1

thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Santuff v. Seitz*, 385 Fed. Appx. 939, 944, 2010 WL 2667441, at *4 (11th Cir. 2011) (quoting *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F. 2d 656, 657 (11th Cir. 1984)). Allstate asserts that the plaintiff gave conflicting testimony about the 2006 insurance application process at her Examination Under Oath ("EUO") during the claim process (denied any knowledge of the application or why it was made); during her deposition (agreed to knowing why the new application was made, but stated that John Jabbour signed the application in her name with her permission); and in her Affidavit (remembered the application process, recalls giving specific information to the agency agent, signed the application herself even though the information contained in it was incorrect). Thus, Allstate argues that this court should disregard the plaintiff's Affidavit in support of her contract claim.

Second, Allstate asserts that the misrepresentations made in the application void the policy. If the Affidavit is, in fact, correct, then Allstate asserts that the plaintiff is bound by the signed insurance application. Under Ala. Code (1975) § 27-17-7, "an insurer need establish only that a misrepresentation in the application was a material contributing influence that induced the insurer to issue the policy." *Nationwide Mutual Fire. Ins. Co. v. Pabon*, 903 So. 2d 759, 766 (Ala. 2004) (rehearing denied Dec. 17, 2004) (citing *Reliance Life Ins. Co. v. Sneed*, 117 So. 307 (1928)). Moreover, argues Allstate, "absent misrepresentations, fraud, or other deceit by the agent, a person able to read and write is bound by an insurance application signed by him or her, whether or not he or she reads it." *Pabo*n, 903 So. 2d at 767 (citing *First Nat'l Life Ins. Co. of America v. Maxey*, 145 So. 589 (1932)). The plaintiff has not alleged that any such fraudulent action occurred.

Allstate further asserts that the plaintiff is still bound by her insurance application even if a

Stuman Agency employee made a mistake during the application process. In support, Allstate relies on the Alabama Supreme Court's ruling in *Pabon*, a case that involved facts similar to the present case. In *Pabon*, the plaintiff applied for homeowner's insurance at the agency office and was asked questions by an agent to complete the application, after which the agent printed the application for the plaintiff's review. *Pabon*, 903 So. 2d at 760. The plaintiff signed the application directly below the following statement: "I hereby declare that the facts state in the above application are true and request the company to issue the insurance and any renewals thereof in reliance thereon." *Id*. The Court held the plaintiff was bound by her signature despite incorrect information in the application, and that because the incorrect information was material to the insurance company's decision to issue the policy, the policy was void due to the misrepresentations made in the application.

Allstate presents the following facts in this case:

> 1) When the policy was applied for, Allstate agent Bart Stuman at the Stuman Agency was contacted.

> 2) Mr. Stuman and/or his employees were given all of the pertinent information and they used a computer system to input the information and print the application.

> 3) [Sherry Butler] then signed the application.[1]

> 4) Directly above the applicant's signature on the subject application was the following statement: "To the best of my knowledge the statements made by me on this application are true. I request the Company, in reliance thereon, to issue the insurance applied for. *I declare that the company may recompute the premium shown if the statements made herein are not substantially true."* (Emphasis added).[2]

---

[1] The fact is that Sherry Butler's attorney-in-fact signed the application.

[2] There may be an issue as to whether the defendant's only remedy in the event of a false application would be to reduce any loss payment by some addition to the premium which was paid. This court does not so hold.

3

>    5) Allstate issued the subject policy based on the representations in the
>    insurance application.
>
>    6) It would have been a violation of Allstate corporate standards to issue the
>    subject policy or the policy would have been issued at a higher premium had
>    Allstate known of the misrepresentation(s) in the application.

Just as in *Pabon*, Allstate argues, these facts warrant a judgment in favor of the insurer.

Furthermore, Allstate argues, even if John Jabbour signed the application under a power of attorney, the plaintiff is still bound by the misrepresentations in the application. Allstate notes that in her deposition, the plaintiff stated that Mr. Jabbour signed the application with her permission. Allstate argues that if Mr. Jabbour did not in fact have the power to enter into a contract on the plaintiff's behalf then no contract exists and that there can be no breach of contract claim. Allstate also argues that the power of attorney authorizes Jabbour to act as an agent on behalf of the principal, and that "[p]owers of attorney [are] strictly construed, restricting the powers to those expressly granted and those incidental powers that are necessary to effectuate the expressed powers." *Sevigny v. New South Federal Savings and Loan Assoc.*, 586 So. 2d 884, 886-87 (Ala. 1991). Here, the power of attorney granted by the plaintiff to Jabbour expressly provided for Jabbour to have:

>    full power and authority to do all and every act and thing whatsoever requisite and
>    necessary to be done relative to any of the foregoing as fully to all intents and
>    purposes as principal might or could do if personally present.

The duties expressly provided included the ability to "make contracts of every kind relative to land ..." and to "make execute, acknowledge, and deliver . . . mortgage and assignments of mortgages ..." Moreover, the plaintiff and Jabbour sought to refinance the subject property, and part of the loan contract required insurance to be maintained on the property.  Allstate argues that obtaining valid insurance on the property was at least incidental to Jabbour's duties as attorney-in-fact.  Allstate

asserts that even if Jabbour did not have express authority, he still acted with implied or apparent authority if he signed the application. Under Alabama law, "it may be stated that an agent's implied authority is that which is proper, usual and necessary to the exercise of the authority expressly granted." *W. B. Davis Hoisery Mill, Inc. V. Word Lumber Company, Inc*., 273 So. 2d 469, 472 (Ala. Civ. App. 1973) (citations omitted).

As attorney-in-fact, asserts Allstate, Jabbour could bind the plaintiff with any representations or misrepresentations made in the application. Allstate argues that it is well-established under Alabama law that "a principal who selects and duly appoints an agent to act for [him/her] must bear the responsibilities and suffer loss for the misconduct or failure of such agent to adequately represent the principal within the terms of that agency." *Butler v. Standard Life Ins. Co. of the South*, 167 So. 307, 308 (Ala. 1936) (rehearing denied April 23, 1936) (citation omitted). "[A]n agent acting with actual or apparent authority who enters into a contract on behalf of a principal binds the principal but not himself." *Lee v. Yes of Russellville, Inc*., 784 So. 1022, 1027 (Ala. 2000). Further, "a principal is liable for his agent's acts within the scope of the latter's apparent authority." *W.B. Davis Hoisery Mill*, 273 So. 2d at 496. Jabbour's power of attorney was not revoked until 2007, per the power of attorney revocation document provided to this court. The revocation specifically states, "this document acknowledges and constitutes notice that the Grantor hereby revokes, rescinds and terminates said power-of-attorney and all authority, rights and power thereto effective this date." The revocation was signed September 21, 2007, almost a year and a half after the time the insurance application was signed.

Allstate argues that the plaintiff's misrepresentations in the application regarding her residency are sufficient to void the policy pursuant to Ala. Code § 27-14-7(a)(3). Allstate asserts that

under this statutory section, the misrepresentation does not have to be "material" so long as Allstate demonstrates that it would not have, in good faith, either issued the subject insurance policy or would have issued the policy at a different premium had it known the truth about the plaintiff's residency. In support, Allstate has provided this court with employee affidavits and a copy of its Southeast Region Risk Management Policy (2006) and Alabama Risk Management Policy (2005) which provide that it would have been a violation of Allstate corporate guidelines to issue the subject manufactured home insurance policy if the plaintiff was not occupying the manufactured home at the time the policy was issued.  Such occupation was a specific requirement of eligibility for coverage. Furthermore, the intent of the applicant is not relevant to the inquiry under § 27-14-7. "The most innocent misrepresentation will afford a reason to [rescind] if the truth is either material to the risk, or even if immaterial, would have caused the particular insurer acting in good faith to have declined coverage in the amount and at the rate obtained by the applicant." *Stephens v. Guardian Life Ins. Co. of America*, 742 F. 2d 1329, 1333 (11th Cir. 1984). Allstate maintains that it is entitled to avoid the policy if "even an innocent misrepresentation of the kind specified in § 27-14-7 was made." *Duren v. Northwest National Life. Ins. Co.*, 581 So. 2d 810, 813 (Ala. 1991).  Allstate avers that the issue of materiality is an issue of law, and notes that the Alabama Supreme Court in *Pabon* found the plaintiff's misrepresentation to be "material as a matter of law." 903 So. 2d at 767-68.

## Plaintiff's Position

In response to Allstate's argument that this court should ignore the plaintiff's Affidavit as inconsistent with her former testimony, the plaintiff asserts that her testimony has in fact been consistent throughout the claims and litigation process. Her Affidavit states:

When the policy was applied for, Allstate agent Bart Stuman at The Stuman Agency

6

was contacted. Mr. Stuman and/or his employees were given all of the pertinent information and they used a computer system to input the information and then they printed the application. . . Mr. Stuman was informed that I was not living at my home at that time. . .[3]

The plaintiff maintains that there has been no contradiction to these stated facts. The plaintiff argues that any misrepresentations contained in her application were mistakes made by agent(s) at the Stuman Agency. The plaintiff argues that there was a "pattern by Allstate's agents in incorrectly identifying the risk it is insuring," pointing to the fact that Allstate earlier erroneously issued the plaintiff a homeowner's policy instead of a manufactured home policy for almost two and a half years before realizing its mistake.

The plaintiff agrees that, at first, she did not dispute that Mr. Jabbour had a valid power of attorney to sign the insurance application, and that regardless of whether he or the plaintiff herself signed the application all parties are bound by that signature. The plaintiff also did not deny that if Jabbour, acting under power of attorney, made misrepresentations while acting as the plaintiff's agent, that the plaintiff would be bound by any such misrepresentations. However, the plaintiff later argued that the existence and scope of a principal/agent relationship under Alabama law is a question of fact to be determined by a jury. *Continental Electric Co. v. American Employers Ins. Co.*, 518 So. 2d 83. 87 (Ala. 1987). The plaintiff also now asserts that a review of the plain language of the power of attorney in the instant case does not support the position that Mr. Jabbour was authorized to make a misrepresentation on behalf of the plaintiff. The plaintiff also denies that such a misrepresentation is always imputed to the principal, stating that Alabama law holds that a misrepresentation *may* be

---

[3] It may be that this statement is based on hearsay and would not be admissible at trial.

imputed.[4]

Regardless, the plaintiff argues,  Allstate is not entitled to void this policy under § 27-14-7. The plaintiff asserts that her, or her attorney-in-fact's,  failure to disclose that she was not occupying the manufactured home at the time she applied for the policy is not in and of itself a material consideration in the risk assessment.  She explains that the sole purpose of an insurer wanting to know whether a house is occupied is to help mitigate damages and put the insurer on prompt notice of a loss should one occur, and the fact that an adult was occupying the home at the time of the fire (the plaintiff's adult son and his girlfriend) would satisfy Allstate's purpose for inquiring who was residing in the home at the time of the application and renewals. The plaintiff  states that while she was not living in the home at the time of the application, John Jabbour was living in the home. Because both she and Jabbour were listed as occupants on the application, Allstate would have to prove that neither she nor Jabbour was residing in the home at the time  in order to meet its burden under § 27-14-7. Therefore, according to the plaintiff, it is immaterial whether she was living in the home at any time.

Furthermore, the plaintiff takes issue with Allstate's argument that it does not have to demonstrate that the misrepresentation was material, arguing that materiality is inherently interwoven into § 27-14-7(a)(3). The plaintiff argues that it is illogical for Allstate to argue that it would have declined coverage for something immaterial, and to argue that the affidavit of one employee is enough to demonstrate that Allstate would not have granted the policy had it known the plaintiff was not residing there. "[I]n every case where a loss occurs, where after an innocent or after a deliberate misstatement in an insurance application, the insurance company cannot be allowed

---

[4] "May be" may have a different meaning than plaintiff suggests.

automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact." *State Farm General Insurance Co. v. Oliver*, 658 F. Supp. 1645 (N.D. Ala. 1987).[5]

The plaintiff argues that the materiality of a particular fact in the risk assessment by an insurer, as well as whether the insurer would have, in good faith, denied the policy based on a particular fact, are questions for the jury. "Alabama courts have consistently held that the issue of whether a particular fact increases the risk of loss assumed by the insurance company-that is, whether it is material to the insurance coverage-is generally one for the jury." *Clark v. Alabama Farm Bureau Mutual Casualty Ins. Co.*, 465 So. 2d 1135 (Ala. Civ. App. 1984). *See also Union Mutual Stock Life Ins. Co. v. Wilkerson*, 367 So. 2d 964, 970 (Ala. Civ. App. 1979) (holding whether an insurer would in good faith not have extended coverage but for the misrepresentations is an issue correctly submitted to the jury). Furthermore, "[t]he last question concerning the applicability of Ala. Code § 27-14-7(a)(3) (1975) involves the crucial words 'good faith.' These words describe a fact which is peculiarly suitable for jury determination." *Oliver*, 658 F. Supp. at 1550.

Finally, the plaintiff avers that Allstate has waived the protection of § 27-14-7(a)(3). In support, the plaintiff directs this court to the district court's decision in *Oliver*, where the court found that the defendant insurer, State Farm, had waived the protections of the statutory provision by providing greater protection in its policy that was provided by § 27-14-7. 658 F. Supp. at 1550. The court explained that State Farm had "contractually excused" certain misrepresentations in the application. *Id*. Similarly, the subject Allstate policy provides: "This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts." The plaintiff states that it is well

---

[5] The foregoing arguments ignore the Risk Management documents.

9

established under Alabama law that no contract can modify a law, but where no principle of public policy is violated parties are at liberty to forego the protections of the law. *See Bell v. General American Trans. Corp.*, 290 So. 2d 184 (Ala. Civ. App. 1973). According to the plaintiff, the language in the Allstate policy tracks the statutory language of § 27-14-7(a)(1) and (2), but does not have language which tracks (a)(3), regarding whether Allstate would have in "good faith" issued the subject policy. The failure to include such language constitutes a waiver of the avenue of avoidance provided by (a)(3).

<u>Conclusions of the Court</u>

As indicated, the plaintiff's position has somewhat changed with regard to the effect of a misrepresentation by an attorney-in-fact.  In her "Letter Brief" dated February 15, 2012, plaintiff stated:

> "[I]t is undisputed that Sherry Butler's signature appears on the application for insurance that is the subject of this controversy. It is further undisputed that Sherry Butler had executed a power of attorney appointing John Jabbour as her agent, sometime prior to the signing of the application for insurance. . . *It is clear from the above quoted case law that the application for insurance in question is binding on all parties to this litigation*. Whether Butler signed the application herself or her agent signed it under a power of attorney is immaterial because the result is the same, that all parties are bound by that signature on the application. . . *The case law is clear that when an agent is acting within the terms of his agency, any misrepresentation of an agent may be imputed to his principal*." (Emphasis added).

In her letter dated March 16, 2012, the plaintiff stated:

> "Alabama law is clear in that the existence and scope of a principal/agent relationship is a question of fact to be determined by a jury, and any misrepresentation of an agent *may* be imputed to his principal. *Continental Electric Co. v. American Employers Ins. Co.,* 518 So. 2d 83, 87 (Ala. 1987).

> It is clear that the scope of an agency relationship is a question for the jury. A review of the plain language of the power of attorney in the instant case clearly does not

support the position that Butler's agent was authorized to make a misrepresentation on he behalf. We contend that the agent, Jabbour, did not have the authority under the power of attorney to make a misrepresentation that would bind Butler. However, even if the misrepresentation is attributable to Butler, the case law does not necessarily impute that to Butler, the caw law clearly says that a misrepresentation *may* be imputed to the principal. We argue that that determination is up to the trier of fact after hearing and weighing all of the evidence in the case and the particular facts at issue."

While the words "insurance" do not explicitly appear in the Power of Attorney, the document does authorize Mr. Jabbour to make certain transactions regarding land, including "To buy and sell land, *making contracts of every kind relative to land, any interest therein or possession thereof*, and take possession and exercise control over the use thereof." (Emphasis added). The Power also authorizes Jabbour to "buy, sell, mortgage, hypothecate, assign transfer, and in any manner deal with goods, wares and merchandise, choses in action, certificates of shares of capital stock, and other property in possession or in action, *and to make, do and transact all and every kind of business of whatever natures*." (Emphasis added). Thus, under the Power of Attorney, Mr. Jabbour had broad authorization to make contracts and engage in other transactions on Butler's behalf, including those specifically dealing with land or other property.

In *Sevigny v. New South Federal Savings and Loan Assoc.*, 586 So. 2d 884, 886-87 (Ala. 1991), the Alabama Supreme Court held that "[p]owers of attorney [are] strictly construed, restricting the powers to those expressly granted and *those incidental powers that are necessary to effectuate the expressed powers*." (Emphasis added).  The plaintiff and Jabbour sought to refinance the subject property, and part of the loan contract required insurance to be maintained on the property. Furthermore, the Power of Attorney also provides, "Giving and granting to said attorney full power and authority to do all and every act and thing whatsoever requisite and necessary to be

11

done relative to any of the foregoing as fully to all intents and purposes as principal might or could do if personally present." *See Butler v. Standard Life Ins. Co. of the South*, 167 So. 307, 308 (Ala. 1936) ("a principal who selects and duly appoints an agent to act for [him/her] must bear the responsibilities and suffer loss for the misconduct or failure of such agent to adequately represent the principal within the terms of that agency."); *Lee v. Yes of Russellville, Inc.*, 784 So. 2d 1022, 1027 (Ala. 2000) ("an agent acting with actual or apparent authority who enters a contract on behalf of a principal binds the principal but not himself."); *W.B. Davis Hoisery Mill, Inc. v. Word Lumber Co., Inc.*, 273 So. 2d 469, 472 (Ala. Civ. App. 1973) ("a principal is liable for his agent's acts within the scope of the latter's apparent authority.").

In *Continental Electric Co.*, 518 So. 2d 83, 84 (Ala. 1987) the court stated:

> This appeal involves an alleged failure by American Employers' Insurance Company ("American"), to pay an insurance claim based on a policy of insurance issued to cover a trailer owned by Continental Electric Company ("Continental"). The specific question presented is whether American was obligated to pay a claim for display samples of Continental's products that were located in the trailer and were damaged when the trailer overturned. American paid part of Continental's claim, but claimed that the contract of insurance did not cover the additional losses incurred by Continental. Continental then sued American, the insurance agency of Fowlkes and Smith, and John Creel, an employee of Fowlkes and Smith.

There was an issue as to whether Creel, as an insurance agent for the agency used by Continental to obtain a policy with American, was authorized to bind American under these facts, which included allegations by Continental that Creel had made certain misrepresentations in the application process about the nature of the coverage of the policy.  The court held that there was enough evidence to present a genuine issue in order to preclude a finding of summary judgment on the agency issue.[6]

---

[6] The issues of fact included whether Creel was even Continental's agent as opposed to being only the agent of Fowlkes and Smith.

There is no question under the facts of the present case that an agency relationship existed between Jabbour and Butler; this much is evidenced by the signed Power of Attorney. The question is instead whether the scope of that agency relationship extends to obtaining the subject insurance policy. In *Continental*, the Alabama Supreme Court recognized that under Alabama law, "[t]he existence and *scope* of a principal-agent relationship is normally a question of fact to be determined by a jury." 518 So. 2d at 87 (citing *Oliver v. Taylor*, 394 So. 2d 945 (Ala. 1981); *National Security Fire & Casualty Co. v. Bowen*, 447 So. 2d 133, 138 (Ala. 1983). The *Oliver* court held that "[g]enerally, summary judgment on the issue of agency would, therefore, be inappropriate." 394 So. at 946 (citing *Moses v. American Home Ass. Co.*, 376 So. 2d 656 (Ala. 1979)). However, if the facts, viewed in the light most favorable to Butler, still do not present a genuine issue of fact as to whether Jabbour was authorized to obtain the subject insurance policy, summary judgment may still be appropriate. *See Oliver*, 394 So. 2d at 946 ("[t]he determination of the appropriateness of summary judgment in *every* case hinges upon whether, based on the affidavits and testimony presented, there was a genuine issue of material fact.") (Emphasis added).

This court concludes that any pertinent issues relate to the law and not disputed facts.[7]  The court concludes that the Risk Management documents dated 2005 and 2006 establish that Allstate's position has been taken in good faith as to a material issue.  Judgment will be entered in favor of the defendant(s).

This the 24th day of April, 2012.

---

[7] It might be advisable to attempt to certify questions to the Supreme Court of Alabama.  However, that court, while it has accepted most previous certifications of this judge and has accepted another which is presently pending, declined to accept this judge's last certification.  This judge does not wish to unduly impose on the courtesy of that Court.  Furthermore, if the plaintiff is inclined to appeal, legal issues as to undisputed  facts would better be decided by an appellate court without time wasted by trial.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**